UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JESSICA MECKLENBURG,

                          Plaintiff,        07-CV-760

                                            **DECISION**
              v.                            **and ORDER**

MICHAEL J. ASTRUE, Commissioner
of Social Security

                          Defendant.

_____

## <u>INTRODUCTION</u>

Plaintiff Jessica A. Mecklenburg ("plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act ("The Act") seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income and Disability Insurance Benefits.[1] Specifically, the plaintiff alleges that the decision of the Administrative Law Judge ("ALJ") O. Price Dodson denying her application for benefits was not supported by substantial evidence in the record and was contrary to applicable legal standards.

The plaintiff moves for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) and 42 U.S.C. 405(g) seeking to reverse the Commissioner's decision or, in the alternative, remand to the Commissioner for reconsideration of the evidence. The Commissioner also moves for judgment on the pleadings pursuant to 42 U.S.C.

_____

[1] This case was transferred to the undersigned by the Honorable John T. Curtin, Judge, United States District Court for the Western District of New York by Order dated October 29, 2009.

405(g) on the grounds that the findings of fact of the Commissioner are supported by substantial evidence. For the reasons discussed below, I hereby deny the Commissioner's motion for judgment on the pleadings, grant plaintiff's motion for judgment on the pleadings, and remand this claim to the Commissioner for further proceedings consistent with this decision.

## BACKGROUND

On May 4 and May 10, 2004, plaintiff filed applications for Supplemental Security Income and Disability Insurance Benefits, respectively, claiming that she had become disabled as of June 1, 2003 due to discogenic and degenerative back disorder. (Transcript 28, 252) (hereinafter "Tr."). Plaintiff's applications were denied on December 7, 2004. (Tr. 28, 252). She subsequently requested a hearing before an Administrative Law Judge ("ALJ") which took place on July 12, 2006. (Tr. 258A). The plaintiff appeared in Buffalo at a video hearing, and was represented by counsel. The ALJ presided over the hearing from an office in Norfolk, Virginia. (Tr. 10). In addition to the plaintiff, a vocational expert also testified.

In a decision dated July 25, 2006, the ALJ found that although the plaintiff had severe impairments due to the residual effects of cervical fusion and lumbar degenerative disc disease, she was not disabled within the meaning of the Act and was capable of performing past relevant work as a social worker. (Tr. 10-17). The ALJ's decision became the final decision of the Commissioner

when the Appeals Council denied plaintiff's request for review on September 14, 2007.  This action followed.  (Tr. 4-7).

## DISCUSSION

### I.  Jurisdiction and Scope of Review

Title 42, section 405(g) of the United States Code grants jurisdiction to Federal District Courts to hear claims based on the denial of Social Security benefits.  Matthews v. Eldridge, 424 U.S. 319, 320 (1976).  This section has been made applicable to SSI cases by 42 U.S.C. section 1383(c)(3).  Additionally, the section directs that when considering such a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record.  See Bubnis v. Apfel, 150 F.3d 177, 181 (2d Cir. 1998); see also Williams v. Comm'r of Soc. Sec., No. 06-2019-cv, 2007 U.S. App. LEXIS 9396, at *3 (2d Cir. Apr. 24, 2007).

Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Metropolitan Stevedore Co. v. Rambo, 521 U.S. 121, 149 (1997)(quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  Section 405(g) thus limits this Court's scope of review to two inquiries: (i) whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole, and (ii) whether the Commissioner's conclusions are based upon an erroneous legal standard.  Green-Younger v. Barnhard, 335 F.3d 99, 105-06 (2d Cir. 2003); see also Wagner v. Secretary of Health &

-3-

<u>Human Serv.</u>, 906 F.2d 856, 860 (2d Cir. 1990)(holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

The Plaintiff and the Commissioner both move for judgment on the pleadings pursuant to 42 U.S.C. 405(g)[2] and Rule 12(c) of the Federal Rules of Civil Procedure. Section 405(g) provides that the District Court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. §405(g)(2009). Under Rule 12(c), judgment on the pleadings may be granted where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. <u>Sellers v. M.C. Floor Crafters, Inc.</u>, 842 F.2d 639, 642 (2d Cir. 1988). If, after a review of the pleadings, the Court is convinced that "the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief," judgment on the pleadings may be appropriate. <u>See</u> <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957).

## II. Standard for entitlement to benefits

Under the Social Security Act, a disability is defined as the "inability to engage in substantial gainful activity by reason of a medically determinable physical or mental impairment which can be

_____

[2] As provided in Title XVI (Supplemental Security Income), codified at 42 U.S.C. 1383(c)(3).

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months..." 42 U.S.C. §423(d)(1)(A) (concerning Old-Age, Survivors', and Disability Insurance); 42 U.S.C. §1382c(a)(3)(A)(concerning SSI payments). An individual will only be considered "under a disability" if his impairment is so severe that he is both unable to do his previous work and unable to engage in any other kind of substantial gainful work that exists in the national economy. §§423(d)(2)(A) and 1382c(a)(3)(b).

"Substantial gainful work" is defined as "work that exists in significant numbers either in the region where the individual lives or in several regions of the country." Id. Work may be considered "substantial" even if it is done on a part-time basis, if less money is earned, or if work responsibilities are lessened from previous employment. 20 C.F.R. § 404.1572(a); 20 C.F.R. § 416.972(a). Work may be considered "gainful" if it is the kind of work usually done for pay or profit, whether or not a profit is realized. 20 C.F.R. §§ 404.1572(b) and 416.972(b). Furthermore, "substantial gainful work" is considered available to an individual regardless of whether such work exists in his immediate area, whether a specific job vacancy exists for him, or whether he would be hired if he were to apply for work. 42 U.S.C. §§423(d)(2)(A) and 1382c(a)(3)(B).

In determining whether or not a claimant is disabled, SSA regulations require the ALJ to perform the following five-step sequential evaluation:

(1) if the claimant is performing substantial gainful work, he is not disabled;

(2) if the claimant is not performing substantial gainful work, his impairment(s) must be "severe" before he can be found disabled;

(3) if the claimant is not performing substantial gainful work and has a "severe" impairment(s) that has lasted or is expected to last for a continuous period of at least 12 months, and if the impairment(s) meets or medically equals a listed impairment contained in Appendix 1, Subpart P, Regulation No. 4, the claimant is presumed disabled without further inquiry;

(4) if the claimant's impairment(s) do not meet or medically equal a listed impairment, the next inquiry is whether the claimant's impairment(s) prevent him from doing his past relevant work, if not, he is not disabled;

(5) if the claimant's impairment(s) prevent him from performing his past relevant work, and other work exists in significant numbers in the national economy that accommodates his residual functional capacity and vocational factors, he is not disabled.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) and 416.920(a)(4)(i)-(v)(2009). After determining that the plaintiff met the insured status requirements of the Social Security Act under sections 216(i) and 223, the ALJ performed the required five-step evaluation and determined that: (i) plaintiff had not engaged in substantial gainful activity; (ii) plaintiff had severe impairments due to the residual effects of cervical fusion and lumbar degenerative disc disease; (iii) plaintiff did not have an impairment that met or equaled a listed impairment under 20 C.F.R. Part 404, Subpart P,

Appendix 1; (iv) plaintiff had the residual functional capacity ("RFC") to perform past relevant work as a social worker; (v) plaintiff was not under a "disability" as defined in the Social Security Act.

**III.    The ALJ's decision to deny plaintiff benefits is not supported by substantial evidence and contains errors of law.**

**A.  The ALJ failed to consider the record on the whole and failed to properly weigh medical evidence in making his RFC findings.**

At the outset, the Regulations are clear that the Commissioner must consider all the evidence presented by a claimant in making a disability determination.  See 20 C.F.R. §404.1520(a)(4) ("We will consider all evidence in your case record when we make a determination or decision whether you are disabled.").  If a claimant's impairments do not meet the criteria for a Listed impairment under Part 404, Subpart P, Appendix 1, the Commissioner "will assess and make a finding about [a claimant's] residual functional capacity based on all the relevant medical and other evidence in your case record, as explained in §404.1545.[3]" 20 C.F.R. §404.1520(e); 20 C.F.R. §416.920.

In delineating the "substantial evidence" test, the Second Circuit Court of Appeals has also noted that "the record as a whole" is considered to determine if the Commissioner's decision is supported.  Kohler v. Astrue, 546 F.3d 260, 265 (2d Cir. 2008).

_____

[3] 20 C.F.R. 416.945 (as provided in Title XVI).  Section 404.1545 then notes that "the limiting effects of all [a claimant's] impairments" are considered in accordance with §404.1529(c).

Furthermore, the Eight Circuit Court of Appeals has noted that "the substantial evidence test ... is more than a mere search of the record for evidence supporting the Secretary's findings." Gavin v. Heckler, 811 F.2d 1195, 1199 (8th Cir. 1987). Rather, "substantial evidence on the record as a whole" is distinguished from mere "substantial evidence" because "'the substantiality of evidence must take into account whatever in the record fairly detracts from its weight.'" Gavin, 811 F.2d at 1199 (quoting Universal Camera Corp. V. National Labor Relations Board, 340 U.S. 474, 488). Therefore, "the court must ... take into consideration the weight of the evidence in the record and apply a balancing test to evidence which is contradictory." Gavin, 811 F.2d at 1199 (citing Steadman v. Securities and Exchange Commission, 450 U.S. 91, 99 (1981). The role of the "district court [is] to evaluate in detail the evidence it used in making its decision and how any contradictory evidence balances out." Gavin, 811 F.2d at 1199. Indeed, the Second Circuit adopts the view that "[t]he Court carefully considers the whole record, examining evidence from both sides 'because an analysis of the substantiality of the evidence must also include that which detracts from its weight.'" Wynn v. Astrue, 617 F.Supp.2d 177, 183 (W.D.N.Y. 2009)(quoting Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1999).

Inherent in considering the record on the whole is weighing medical opinions as provided under the regulations. When evidence is in any way inconsistent, under 20 C.F.R. §§404.1527 and 416.927,

the Commissioner will weigh all the evidence in making a disability determination. When such evidence is a medical opinion, the regulations provide factors that must be applied to properly weigh such opinions. 20 C.F.R. §§404.1527(d) and 416.927(d). The Second Circuit has stated, "[a]fter considering the above factors, the ALJ must 'comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion.'" Burgess v. Astrue, 537 F.3d 117, 129 (2d Cir. 2008). Remand is appropriate where the ALJ fails to provide "'good reasons' for not crediting the opinion of a claimant's treating physician." Burgess, 537 F.3d at 129-30 (citing Snell v. Apfel, 177 F.3d 128, 133 (2d Cir.)).

Although "[a] treating physician's statement that the claimant is disabled cannot itself be determinative,"[4] the regulations specify that "a treating sources's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) will be given 'controlling weight' if the opinion is 'well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in your case record.'" Green-Younger, 335 F.3d 99, 106 (2d Cir. 2003)(citing 20 C.F.R. 404.1527(d)(2); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000); Rosa v. Callahan, 168 F.3d 72, 78-79 (2d Cir. 1999)). Even where a treating source's opinion is not given controlling weight, the Commissioner must "apply the factors listed ... [and] will always give good reasons ... for the weight [he] give[s] [claimant's]

---

[4] Citing Snell, 177 F.3d 128, 133 (2d Cir.).

treating source's opinion." 20 C.F.R. §§404.1527(d)(2) and 416(d)(2).

An ALJ need not mention every piece of evidence in the record,[5] but at the same time he cannot pick and choose only parts of a medical opinion favoring his conclusion of nondisability[6] and he cannot "ignore an entire line of evidence that is contrary to [his] findings."[7]

Here, adequate balancing of contradictory evidence and consideration of the record on the whole is not apparent in the ALJ's opinion. First, substantive discussion of the plaintiff's cervical fusion surgery or symptoms precipitating it is lacking. The ALJ devotes only one sentence to plaintiff's surgery, which was a risky and invasive procedure in which the treating neurosurgeon, Dr. Walter Grand, appropriately warned plaintiff that "there are no guarantees" and she "might need multiple neck operations," and that there were "always dangers to life and limp [sic] including paralysis and throat injury." (Tr. 143). Imaging of plaintiff's cervical spine around that time revealed pathology, including

> "C5-6: small left paramedian herniation of the nucleus pulposus of the protrusion type and hypertrophy of the left uncovertebral joint resulting in some narrowing of the left foramen [without] stenosis; C6-7: broad based

---

[5] <u>Monguer v. Heckler</u>, 722 F.2d 1033, 1040 (2d Cir. 1983).

[6] <u>Robinson v. Barnhart</u>, 366 F.3d 1078, 1083(10th Cir. 2004).

[7] <u>Zurawski v. Halter</u>, 245 F.3d 881, 888 (7 th Cir. 2001)(quoting <u>Henderson v. Apfel</u>, 179 F.3d 507, 514 (7 th Cir. 1999)).

> disc bulge without stenosis or cord
> compression; C7-T1: right paramedian
> herniation of the nucleus pulposus of the
> protrusion type with ild [sic] encroachment
> upon the right foramen."

In response to this imaging, Dr. Grand commented "MRI scan of the cervical region shows a right sided C7-T1 disc.... a small disc at C5-6 and C6-7 ...." (Tr. 143). Further, he noted "[t]he only thing [he] could advise would be a C7-T1 disckectomy, fusion, bone dowel and plating. This seems to correlate at this point clinically with [plaintiff's] complaints relating to the hand which seems to involve the C8 nerve root." (Tr. 143). Dr. Grand's operative report notes "[o]ut laterally on the right side, which was the side of the patient's pain, she had a tear in the posterior longitudinal ligament, and there was herniated disc over the C-8 nerve root extending out laterally, as well as medially...." (Tr. 126).

Although Dr. Grand's subsequent notes document post-surgical relief of plaintiff's symptom of arm pain, his last note indicates that she "still has some shoulder pain and neck pain," and that he would see her again in three months, which would have been June 2004. (Tr. 137). A note from plaintiff's then primary care physician, Dr. Santhananthan, dated June 28, 2004 indicates plaintiff was still complaining of "upper-mid back pain [and] thoracic-lumbar area pain" and "would like a second opinion" because "Dr. Grand has scheduled [a] nerve block procedure [for] 6/30/04." (Tr. 162). The record does not contain a note from

Dr. Grand corresponding to his recommended nerve block, nor does the record contain any indication that plaintiff underwent the nerve block.  Rather, this sequence of medical opinions appeared to occasion plaintiff's changing treatment sources.

Moreover, in making his RFC determination, the ALJ improperly discounted the opinion of a consultative physician, Dr. Balderman, who found moderate limitations in plaintiff's ability to move her head.  (Tr. 148). Although the ALJ stated that this limitation is "not supported by the objective evidence in the record,"[8] Dr. Balderman did give a specific and detailed assessment of the range of motion of plaintiff's spine and other joints.  (Tr. 150). In fact, the Commissioner's brief provides a frame of reference for normal ranges of motion, and simple comparison reveals that plaintiff's cervical ranges of motion are less than those that would be considered normal.  (Defendant's brief, 8).  This would therefore provide objective support for Dr. Balderman's assessment.

Here, the ALJ also does not discuss evidence from Dr. Gibbons, the plaintiff's "second opinion" neurosurgeon, that is inconsistent with his finding of lack of disability.  Moreover, the ALJ gives the false impression of a long-standing treatment relationship in assigning weight to this opinion by noting the doctor "has personally observed the claimant's condition over a significant

---

[8] Tr. 15.

period of time." (Tr. 15). In fact, Dr. Gibbons only saw plaintiff twice. When Dr. Gibbons first saw plaintiff on November 8, 2004, he noted "diffuse hyporeflexia" on examination and opined that her "high thoracic pain ... may be related to her previous neck problem" and he recommended x-rays to further evaluate this complaint. (Tr. 195). Dr. Gibbons also diagnosed plaintiff with "a degree of neurogenic claudication," which is "the characteristic symptom of spinal stenosis ... characterized by pain, numbness, tingling and weakness in one or both lower extremities, brought on by walking and relieved only by sitting, bending forward or lying down [in which s]ymptoms tend to come on insidiously and slowly worsen,"[9] for which he recommended MRI and physical therapy. (Tr. 195). Finally, he diagnosed plaintiff with cervical spondylosis[10] without myelopathy. (Tr. 195).

At the second and last known appointment with Dr. Gibbons on June 27, 2005, the doctor again diagnosed cervical and lumbar spondylosis. (Tr. 236-37). Although he noted that MRI of the lumbar spine was essentially normal for plaintiff's age, there was only x-ray of the cervical spine which revealed "minimal spurring at the 5-6 and 6-7 levels." (Tr. 236). Nonetheless, the plaintiff had presented to the appointment on that day complaining of "continued pain" in her neck and back, and physical examination

---

[9] 4-11 Attorneys' Textbook of Medicine (3d edition) P 11.50 (2009).

[10] "[D]evelopment of abnormal bone growths on the vertebrae." 4-13 Attorneys' Textbook of Medicine (3d edition) P 13.20 (2009).

revealed "reasonable range of motion" of the neck, which does not equal a "normal" range of motion.  In all, the ALJ picks the portions of the two exams by Dr. Gibbons that support his conclusion.

The ALJ also failed to properly apply the "treating physician" rule as pertains to the opinion of Dr. Sauret, the plaintiff's more recent primary care physician.  As discussed above, an ALJ need not give deference to determinations reserved to the Commissioner such as whether a plaintiff is disabled, but he must give "good reasons" for discounting the opinion of treating physician regarding the nature and severity of a claimant's limitations.  <u>Green-Younger</u>, 335 F.3d at 105-06 (2d Cir. 2003).

Here, although Dr. Sauret opined that the plaintiff was "totally disabled" the ALJ stated that Dr. Sauret did not "identify specific and objective clinical findings that supported his finding or disability."  While an "ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole ... or by objective medical findings,"[11] in this case Dr. Sauret's office notes document severe degenerative disc disease, insomnia secondary to pain, spasms, and limited range of motion.  (Tr. 227, 229).  Further, the ALJ's finding regarding Dr. Sauret's opinion should have triggered his duty to develop the record.

---

[11] <u>Batson V. Comm'r. of Social Security Administration</u>, 359 F.3d 1190, 1195 (9th Cir. 2004).

Therefore, because the ALJ's decision does not evince appropriate balancing of the record on the whole and is not supported by substantial evidence, I conclude that the ALJ's RFC determination was improper.

**B.  The ALJ failed to make adequate findings and articulate adequate reasons to support his determination that plaintiff lacked credibility.**

In his decision, the ALJ dismisses the plaintiff's subjective complaints after finding these complaints "not entirely credible." (Tr. 15).  The ALJ argues that plaintiff's statements are not credible because her "complaints of 'disabling' pain are inconsistent with:" (i) "the conservative treatment required since the cervical surgery," (ii) objective findings, and (iii) "her reported activities of daily living." (Tr. 14).  All three reasons for finding the plaintiff lacked credibility are legally erroneous.


Under the Regulations and subsequent interpretive rulings, when making a credibility finding, in addition to objective medical evidence, an ALJ must consider:

(i)  the claimant's daily activities;

(ii)  "the location, duration, frequency and intensity of the [claimant's] pain or other symptoms;"

(iii) "factors that precipitate and aggravate the symptoms;"

(iv)  any medication the claimant has taken to alleviate symptoms, including the "type, dosage, effectiveness, and side effects" of the medications;

(v) non-pharmacological treatment a claimant has received to relieve pain or symptoms;

(vi) any other measures the claimant has used to alleviate pain or symptoms;

(vii) any other factors that might have a bearing on the claimant's functional limitations and restrictions caused by pain or other symptoms.

20 C.F.R. §404.1529(c); 20 C.F.R. §416.929(c); SSR 96-7p.

First, regarding plaintiff's "conservative treatment," an ALJ "may not impose [] [his respective] notion that the severity of a physical impairment directly correlates with the intrusiveness of the medical treatment ordered...." Burgess, 537 F.3d at 129 (2d Cir. 2008)(quoting Shaw v. Chater, 221 F.3d 126, 134-35(2d Cir. 2000)). Rather, conservative treatment "*may* ... help to support the Commissioner's conclusion that the claimant is not disabled *if* that fact is accompanied by other substantial evidence in the record ...." Burgess, 537 F.3d at 129 (2d Cir. 2008)(citing Diaz v. Shalala, 59 F.3d 307, 314 (2d Cir. 1995)(emphasis mine). SSR 96-7p emphasizes the importance of considering a claimant's longitudinal medical history and indicates that while an "individual's statements may be less credible if the level ... of treatment is inconsistent with the level of complaints .... the adjudicator must not draw any inferences about an individual's symptoms and their functional effects ... without first considering any explanations that the individual may provide, or other information in the case record...." One possible explanation here,

provided as an example in the ruling, is that an "individual may have been advised by a medical source that there is no further, effective treatment that can be prescribed and undertaken that would benefit the individual." SSR 96-7p. Thus, that plaintiff was not a surgical candidate, as noted by the ALJ,[12] may be explained on this basis.

Second, while "objective medical evidence" is one factor that may lend to credibility, the very need to make a credibility finding occurs *because* objective evidence may not be present.

Finally, the ALJ mischaracterizes the plaintiff's ability to perform activities of daily living to her disadvantage. Kohler v. Astrue, 546 F.3d 260, 268 (2d Cir. 2008). Specifically, the ALJ notes that plaintiff "reported being independent in her ability to bathe and dress. ... [s]he reported reading, fixing simple meals and doing 'light laundry.' ... [she] also reported watching television, visiting relatives and working on "Sudoko" puzzles," and concluded that her "daily activities show that her concentration is not seriously impaired by pain," and that "complaints of 'disabling' pain are inconsistent ... with her reported daily activities." (Tr. 14).

While an individual's daily activities must be considered in determining the credibility of complaints under SSR 96-7p, the Second Circuit has noted, "[w]hen a disabled person gamely chooses

---

[12] Tr. 15.

to endure pain in order to pursue important goals, it would be a shame to hold this endurance against him in determining benefits unless his conduct truly showed that he is capable of working." The Sixth and the Eighth Circuits concur: "[t]he fact that appellant can still perform simple functions, such as driving, grocery shopping, dish washing and floor sweeping, does not necessarily indicate that this appellant possesses an ability to engage in substantial gainful activity. Such activity is intermittent and not continuous, and is done in spite of the pain suffered by appellant;"[13] "the ability to do activities such as light housework and visiting with friends provides little or no support for the finding that a claimant can perform full-time competitive work."[14]

Here, the activities of daily living listed by the ALJ closely resemble those noted by Courts of Appeals as not indicative of the ability to engage in substantial gainful activity. Further, they are a mischaracterization of the extent of impairment reported by plaintiff. In her hearing testimony, the plaintiff indicated that she is in and out of bed during the course of the day and lays down for periods of one to two hours, is awakened by pain after only four hours of sleep at night, and requires assistance to accomplish grocery shopping. (Tr. 267-68).

---

[13] <u>Walston v. Gardner</u>, 381 F.2d 580, 586 (6th Cir. 1967).

[14] <u>Swope v. Barnhart</u>, 436 F.3d 1023 (2006)(citing <u>Hogg v. Shalala</u>, 45 F.3d 276, 278 (8th Cir. 1996)).

SSR 96-7p provides seven factors that must be considered by an ALJ in determining the credibility of a claimant's statements. Because these factors were not adequately considered in the ALJ's decision, I conclude that his determination that the plaintiff's subjective complaints were not entirely credible was based on improper application of the correct legal standard and is not supported by substantial evidence.

## C. The ALJ improperly discounted plaintiff's subjective complaints and required her to prove disability through "objective" medical evidence.

Social Security Regulations, rulings, and relevant case law consistently state that objective evidence is not required to prove disability. See Green-Younger, 335 F.3d 99 (2d Cir. 2003); 20 C.F.R. §§404.1529(c) and 416.929(c); SSR 96-7p. Moreover, "subjective *pain* may serve as the basis for establishing disability, even if ... unaccompanied by positive clinical findings of other 'objective' medical evidence." Green-Younger, 335 F.3d at 108 (2d Cir. 2003)(citing Donato v. Sec. of Dep't of Health and Human Servs., 721 F.2d 414, 418-19 (2d Cir. 1983).

When an adjudicator finds, as here, that there is "an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms," and "the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must

make a finding on the credibility of the individual's statements based on consideration of the entire case record." SSR 96-7p. Thus, a lack of objective evidence does not provide justification for wholesale rejection of a plaintiff's subjective complaints. Rather, it indicates the need to initiate further, thorough analysis.

Here, the ALJ repeatedly refers to lack of objective evidence as a basis for his decision. For example, he states "objective findings on examinations are not consistent with 'disabling' pain" and "[plaintiff's] complaints of 'disabling' pain are inconsistent with ... the objective findings on examination." (Tr. 14). The ALJ's concluding statement in his RFC finding is "objective medical evidence in this case supports the residual functional capacity determined in the finding above." However, determining residual functional capacity with a disproportionate emphasis on objective findings constitutes legal error.

The Eight Circuit has stated, "an arguable deficiency in opinion-writing technique is not a sufficient reason for setting aside an administrative finding where ... the deficiency probably had no practical effect on the outcome of the case." Brown v. Chater, 87 F.3d 963, 966 (8th Cir. 1996)(quoting Benskin v. Bowen, 830 F.2d 878, 883 (8th Cir. 1987)). However, such is not the case here. There is insufficient indication in the ALJ's decision to demonstrate that he properly considered the requisite seven credibility factors noted above. 20 C.F.R. §404.1529(c); 20 C.F.R.

§416.929(c); SSR 96-7p. I therefore conclude that the ALJ's failure to consider the plaintiff's subjective complaints, and thereby make a fair credibility assessment, constitutes legal error.

**D. The ALJ failed to fully develop the record.**

As noted above, an ALJ has an affirmative duty to develop the record in a disability proceeding. See Batista v. Barnhart, 326 F.Supp.2d 345, 353 (E.D.N.Y. 2004)("[t]he responsibility of an ALJ to fully develop the record is a bedrock principle of Social Security law," citing Brown v. Apfel, 174 F.3d 59 (2d Cir. 1999)); see also SSR 96-7p ("the adjudicator must make every reasonable effort to obtain available information that could shed light on the credibility of the individual's statements.").

Moreover, "an ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record." Burgess v. Astrue, 537 F.3d 117, 129 (2d Cir. 2008)(citing Rosa v. Callahan, 168 F3d. 72, 79 (2d Cir. 1999)). The Second Circuit has stated, "the ALJ must not only develop the proof but carefully weigh it." Burgess, 537 F.3d at 79. Further, the Tenth Circuit has noted that an ALJ's statement that a doctor's "records did not give a reason for his opinion that claimant is unable to work triggered the ALJ's duty to seek further development of the record before rejecting the opinion." Robinson, 366 F.3d at 1084 (10th Cir. 2004).

Here, the ALJ did not adequately develop the record related to two important aspects of the medical evidence, and thus he did not consider the plaintiff's disability claim in its entirety.

First, the ALJ failed to develop the record regarding plaintiff's pursuit of second opinions. Specifically, at least one important note from Dr. Grand, the surgeon that performed the plaintiff's cervical fusion, appears missing. A note from her then primary care physician, Dr. Santhananthan, who was never mentioned by the ALJ, indicates plaintiff "would like [a second] opinion – Dr. Grand has scheduled [a] nerve block procedure." (Tr. 162). That the plaintiff sought a second opinion would have been an important factor to consider in making a proper credibility determination. SSR 96-7p.

In response to plaintiff's request for a second opinion, Dr. Santhananthan recommended that she "follow with Dr. Grand." (Tr. 162). This note dated June 28, 2004 appears to be the last date on which plaintiff saw Dr. Santhananthan. According to the available records, it appears plaintiff subsequently sought treatment from a different primary care physician, Dr. Sauret, beginning in August 2004. His initial intake note indicated that plaintiff "want[ed a second] opinion regarding back surgery." (Tr. 206). Dr. Sauret then referred plaintiff to "Dr. Gutterman" [sic]; plaintiff was ultimately evaluated on November 8, 2004 by a nurse practitioner and Dr. Gibbons, both of whom are associated

with University at Buffalo Neurosurgery along with Dr. Guterman. (Tr. 191).

Under SSR 96-7p, "[p]ersistent attempts ...to obtain relief of pain or other symptoms, such as by ... referrals to specialists, or changing treatment sources may be a *strong indication* that the symptoms are a source of distress to the individual and generally lend support to an individual's allegations of intense and persistent symptoms." (emphasis mine). Thus, failure to obtain missing information may have yielded an erroneous credibility finding, and thus an erroneous finding that plaintiff was not disabled.

Second, the ALJ's duty to develop record was triggered when Dr. Sauret opined that plaintiff was "totally disabled" without, according to the ALJ, "identify[ing] specific and objective clinical findings that supported his finding or disability." (Tr. 15). See Robinson, 366 F.3d at 1084 (10th Cir. 2004)(An ALJ's statements that a doctor's "records did not give a reason for his opinion that claimant is unable to work triggered the ALJ's duty to seek further development of the record before rejecting the opinion."). However, the ALJ's characterization of the evidence might not be fully accurate, as Dr. Sauret's progress notes document weakness, severe degenerative disc disease, insomnia secondary to pain, muscle spasms, and limited range of motion. (Tr. 206, 227, 229).

I therefore conclude that the ALJ failed to apply the proper legal standard by neglecting to fully develop the record.

When the opinions of plaintiff's treating physicians and other treating sources are considered along with plaintiff's hearing testimony, the record provides ample documentation of "objective" findings and substantial evidence that plaintiff cannot perform her past relevant work as a social worker. I therefore find that the plaintiff is disabled within the meaning of the Social Security Act.

## CONCLUSION

For the reasons set forth above, I find that the Commissioner's decision that the plaintiff is not disabled was based on errors or law and was not supported by substantial evidence. The record contains substantial evidence of disability such that further evidentiary proceedings would serve no purpose. I therefore grant plaintiff's motion for judgment on the pleadings insofar as the case is remanded to the Social Security Administration for calculation and payment of benefits.

ALL OF THE ABOVE IS SO ORDERED.

S/Michael A. Telesca

_____
Michael A. Telesca
United States District Judge

DATED: Rochester, New York
       November 19, 2009